**Nos. 10-55834, 10-55853**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**PAULA PETRELLA,**

*Plaintiff-Appellant*

v.

**METRO-GOLDWYN-MAYER, INC.,** *et al.*,

*Defendants-Appellees*

**On Appeal from the United States District Court
for the Central District of California, Western Division—Los Angeles
Hon. George H. Wu, District Judge
No. 09-CV-00072 (MANx)**

**OPPOSITION TO MOTION TO FILE SUPPLEMENTAL BRIEF ON REMAND FROM THE SUPREME COURT**

Glen L. Kulik, Esq. (SBN 082170)/gkulik@kgslaw.com
KULIK GOTTESMAN & SIEGEL LLP
15303 Ventura Boulevard, Suite 1400
Sherman Oaks, CA 91403
Telephone: (310) 557-9200
Facsimile: (310) 557-0224

ATTORNEYS FOR PLAINTIFF–APPELLANT PAULA PETRELLA

# **TABLE OF CONTENTS**

**Page**

1. INTRODUCTION ................................................................................... 1

2. SINCE THE DISTRICT COURT FOUND TRIABLE ISSUES OF FACT ON EACH OF THE COPYRIGHT ARGUMENTS, THE CASE SHOULD, WITHOUT FURTHER DELAY, BE REMANDED FOR TRIAL WITH APPELLEES PRESERVING THEIR RIGHT TO APPEAL THE JURY'S VERDICT. ............................ 4

3. NO FURTHER BRIEFING OR ORAL ARGUMENT SHOULD BE PERMITTED. ................................................................................... 12

4. CONCLUSION ...................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Banuelos v. Construction Laborers' Trust Funds for Southern California*
   382 F.3d 897 (9th Cir. 2004) ..................................................................... 11

*Brodheim v.Cry*
   584 F.3d 1262 (9th Cir. 2009) ..................................................................... 1

*Cry, Malik v. Brown*
   71 F.3d 724 (9th Cir. 1995.) ........................................................................ 1

*General Signal Corp. v. MCI Telecom Corp.*
   66 F.3d 1500 (9th Cir. 1995) ..................................................................... 11

*Johnson v. Jones*
   515 U.S. 304 (1995) ..................................................................................... 1

*McCoy v. San Francisco City and County*
   14 F.3d 28 (9th Cir. 1994) ......................................................................... 12

*Portman v. County of Santa Clara*
   995 F.3d 898 (9th Cir. 1993) ..................................................................... 12

## **Statutes**

17 U.S.C. Sec. 103(b) ........................................................................................ 9

1.  **INTRODUCTION.**

After providing careful direction to the district court on the remedies it may consider at trial "[s]hould Petrella ultimately prevail on the merits," the United States Supreme Court issued the following order: "[T]he judgment of the United States Court of Appeals for the Ninth Circuit is reversed and the case is remanded for further proceedings consistent with this opinion." The case was remanded for trial, not for Appellees to start over with new briefs and oral argument so this court can consider their appeal a second time.

Appellees argue there are alternate grounds on which summary judgment could still be granted if laches is unavailing. However, contrary to the statement on page 13 of the motion, nothing was left unresolved in the district court. The judge expressly considered and rejected the alternate grounds ("Copyright Arguments"), holding there were disputed issues of fact in each instance. If not for laches the motion would have been denied, and denial of a summary judgment motion is not appealable. *Brodheim v. Cry*, 584 F.3d 1262, 1274 (9th Cir. 2009); *Cry, Malik v. Brown,* 71 F.3d 724, 727 (9th Cir. 1995.) This is especially true when a motion is denied on the grounds that there is a triable issue of fact. *Johnson v. Jones,* 515 U.S. 304, 315-18, 115 S. Ct. 2151 (1995). Appellees should not be permitted to circumvent that general rule just because the lower court mistakenly relied on laches to grant summary judgment.

There are circumstances in which an appellate court may affirm summary judgment on grounds other than those relied on by the lower court. Such circumstances, however, do not include those presented in this case. Appellees have failed to cite any authority granting an appellate court the power to affirm summary judgment on grounds the lower court expressly considered and rejected, especially after a remand from the Supreme Court. The cases cited by Appellees do not support that proposition. The Ninth Circuit may briefly have jurisdiction after a remand, but jurisdiction to do what? Certainly not to do what Appellees are requesting, and even if such power does exist, it is at most discretionary.

Most important, there will be no prejudice to Appellees if the present motion is denied because they have a right to raise the Copyright Arguments on appeal from any future adverse jury verdict.

Under no circumstances should the court allow further briefing or oral argument. Both sides had a full opportunity to address the Copyright Arguments in their prior Ninth Circuit briefs and they did so. In their "Principal and Response Brief," filed January 28, 2011, Appellees spent a substantial portion of the first 24 pages listing facts and summarizing their Copyright Arguments. They spent the entirety of pages 38 through 70 addressing the Copyright Arguments exclusively. Appellant's "Reply and Response Brief," filed February 28, 2011, covered this subject at pages 5-6 and 19 through 28. In their Reply Brief filed March 28, 2011,

Appellees chose to focus mainly on ridiculing and demeaning Appellant, calling her case nothing but a "raft of frivolous and unreasonable claims in the face of dispositive authority." (Page 8.) However, they did find time to address the Copyright Arguments again at pages 7-8 and 13 through 16. In the oral argument, both sides had an opportunity to address the Copyright Arguments if they chose to do so.

Appellant will not address the many misstatements in the motion – statements such as Appellant "conceded" the only similarities are historical facts and *scenes a faire* and that Appellant contends the license from La Motta was "void." Such inaccuracies are a hallmark of every brief Appellees have filed in the case. What is important for present purposes, however, is that the case is 5-1/2 years old and the appeal itself was filed well over four years ago. Appellant has been forced to endure the threats, bullying, and ridicule that studios and their lawyers heap on anyone who has the audacity to challenge them, and it comes at a high price financially, emotionally and physically. While Appellees have unlimited resources, Appellant does not. She has earned the right to return to the district court for trial and before doing so should not have to incur further expense and endure yet another delay.

2. **SINCE THE DISTRICT COURT FOUND TRIABLE ISSUES OF FACT ON EACH OF THE COPYRIGHT ARGUMENTS, THE CASE SHOULD, WITHOUT FURTHER DELAY, BE REMANDED FOR TRIAL WITH APPELLEES PRESERVING THEIR RIGHT TO APPEAL THE JURY'S VERDICT.**

The summary judgment motion was filed on September 25, 2009. It was 25 pages in length. The first 19 pages addressed the Copyright Arguments. The district court rejected those arguments on the grounds there were disputed issues of fact, but concluded at the end of the Statement of Decision that the claims were barred by the doctrine of laches.

In the present motion, Appellees assert that "now is the time for the Court to address the infringement issue left unresolved by the District Court." (Motion, pg. 13.) That is a curious statement since there was no issue left unresolved in the district court. The judge addressed and rejected each of the Copyright Arguments.

Appellees argued that summary judgment should be granted because, in the order the issues were addressed in the lower court's Statement of Decision: (i) the screenplay copyrighted in 1963 ("Screenplay") was somehow derivative of the book that was copyrighted and published in 1970 ("Book"), rather than vice versa, (ii) their license from Jake LaMotta of his interest in the Screenplay and the Book was a bar to any infringement action, (iii) there was no substantial similarity

between the Screenplay and the movie *Raging Bull* ("Film"); and (iv) the claims were barred by laches. The district court could have concluded that since laches was a bar to the action it need not address the other grounds raised by Appellees, but that is not what transpired. The lower court considered and denied summary judgment on each of first three grounds, finding disputed issues of fact in each instance. Only then did it proceed to hold the suit was barred by laches.

Appellees are adept at stating their arguments in such a way as to make it appear they are reciting facts when it is actually mere rhetoric. If one is searching for the truth, it is this: The Screenplay was written and copyrighted in 1963 while the book was written in 1969 and published in 1970. Appellees' feigned indignation that they were misled by a written statement in 1976 to the contrary by La Motta and Peter Petrella ("Petrella") is just an act, as they know the evidence is conclusive that the Screenplay was written well before the Book. The Book was written on the advice of their attorney Joseph Heller in 1969 who advised La Motta and Petrella that they might have better luck attracting the attention of a movie producer if the concept was presented in book form, especially since they had tried and failed to sell the Screenplay for some time. Mr. Heller wrote:

> Jake La Motta and Peter Savage [Petrella] came to see me for the first time in 1969. They handed me a screenplay which Pete Savage had written based on

Jake's life. I understand from other sources that this same screenplay had been offered for some time prior to our meeting. I read the screenplay, saw much substance in it but advised Jake and Pete that it would have to be rewritten . . . . I suggested the possibility of turning the screenplay into a novel. I explained that as a novel there was always the possibility of someone reading it and wanting to do it as a motion picture. The book was published in 1970." [ER 1746.]

The above discussion with Heller is corroborated in the Book itself where the story of how and why Petrella and La Motta decided to write the Book is described. [ER 601.] The Book is dedicated: "To my friend Marty Heller and my beloved children." [ER 367.] It contains photographs and passages about events in the lives of La Motta and Petrella that occurred as late as 1969-70. [ER 475, 600, 1092.] The 1976 Letter Agreement ("Rights Agreement") between La Motta and Petrella on the one hand, and Chartoff Winkler Productions ("CWP") on the other, was addressed to Heller's law firm [ER 1663] and shows on pages 25 and 25a that all payments due Petrella and La Motta were to be delivered to Heller – 90% to Heller on their behalf and 10% to Heller personally [ER 1692-93.] Profit

participation statements were sent to Heller [ER 1734.] Clearly Heller was in a position to know the true facts as recited in his 1980 letter quoted above.

In 1978, Petrella sent the Screenplay to the film's producer Irwin Winkler of CWP. He wrote in a cover letter: "It was this version that sold the book to Prentice-Hall. I hope it will help your new writer in some measure. [ER 1733.]

In the face of this mountain of conclusive evidence, the recitation in the Rights Agreement that the 1963 and 1973 screenplays were based on the Book was simply a mistake that was overlooked in the context of a long, detailed and complicated agreement. There are a number of factual mistakes and misspellings in that contract, including in that same paragraph. [ER 1088-89.]

Most important, <u>Appellees could not possibly have relied on the statement or been prejudiced by the mistake</u>. When CWP, who later assigned the contract to Appellees, acquired a license from Petrella and La Motta, the only thing it needed to establish was that the three written works listed in the Rights Agreement were original and not based on someone else's work they did not own. That is why in paragraph 8 of the Rights Agreement CWP had Petrella and La Motta represent that the Book, the Screenplay, and the 1973 Screenplay, were all original and not based on any other material. It was immaterial at the time, as between those three works which came first since CWP obtained a license to use all three. When the Rights Agreement was drafted in 1976, no one could have predicted the Supreme

Court's 1990 decision in *Abend v. Stewart,* which is the sole basis for this lawsuit and the only reason it became necessary to determine whether the Screenplay or the Book was written first.

The trial court addressed this issue in detail in the Statement of Decision, holding, 'There is a factual dispute whether the Book is a derivative work" or "whether the 1963 Screenplay is, as Defendants' argue, a derivative work based on the Book." [ER 6, 7.] As the court squarely concluded: "Thus, there is a triable issue." [ER 8.) In sum, while the evidence is conclusive that the Screenplay was written first, there was, at a minimum, a disputed issue of fact that could only be resolved by the jury.

So, too, did the district court reject the argument that summary judgment should be granted because Appellees continue to be a licensee of La Motta's interest in the Book and Screenplay. [ER 8.] For one thing, La Motta had no interest in the Screenplay, which was registered with the Copyright Office in 1963 with Petrella listed as the sole author; or at least there was a material issue of fact. The lower court noted, "Defendants' efforts to negate Plaintiff's contention that the 1963 Screenplay is a work of sole authorship are not compelling." [ER 06.]

Appellees then argued that even if the Book is derivative of the Screenplay, they are immune from copyright liability because La Motta, a co-author of the Book, licensed his rights in the Book to Appellants. But if the Screenplay was first

{opp2mot;1}  8

in time the Book was a derivative work, and the license from La Motta would only be for whatever minimal expression was contained in the Book which was not contained in the Screenplay. Throughout the litigation Appellees have repeatedly stated that the Book and the Screenplay are "virtually identical," most recently in the present motion at page 3 ("the Book and the 1963 Screenplay are virtually identical") and again on page 4 ("because the 1963 Screenplay is the same as the Book in all elements related to the current action, Petrella has no viable copyright infringement claim)." Assuming the Screenplay was written first, however, which is clearly correct, the Screenplay is the original work, the Book is derivative, and La Motta had no separate, protectable expression to assign to CWP because all of the original expression was derived from the Screenplay which he did not own.

Thus, the district court correctly denied summary judgment, holding that under 17 U.S.C. Sec. 103(b), "Plaintiff still could have a claim of copyright infringement with respect to any parts of the Book that are also present in [and thus derivative of] the 1963 screenplay." [ER 8.]

Finally, the district court held that Appellants "failed to carry their initial burden" to show there is no substantial similarity between protectable elements in the Film and the Screenplay. [ER 9.] As the lower court observed, "Plaintiff must show that the Film copied constituent elements of the 1963 screenplay that are original." [ER 8.] No one could argue with a straight face that the Film and the

{opp2mot;1}    9

Screenplay are not substantially similar. The real issue is whether they are substantially similar in their original, protectable elements. Appellees were forced to argue that the Book came first and thus the Screenplay contained no protectable expression as its contents were merely copied from the Book. The problem with the argument is that the Book did not come first, the Screenplay did, or at least there was a triable issue of fact according to the district court. If the Screenplay was the earlier work, then <u>its</u> content was the original content and if the two are the same as Appellees argue, the Book contained no original, protectable expression for La Motta to assign. The district court also observed that other than mere conclusions and arguments, Appellees produced no evidence to identify what was original to each separate work (the Screenplay, the 1973 Screenplay, the Book, and the Film), and the court did not feel it was able to make that complex analysis in a conclusive manner on its own. [ER 9.]

Predictably, Appellees also argued the Film and the Screenplay contain mere historical non-copyrightable events and thus their similarity is immaterial. They argue again on page 6 of the motion – as if the mere act of their saying so makes it a fact – that the "only overlap between the content of the Film and the Literary Works are common elements that related to historical, unprotectable, facts from Jake La Motta's life and boxing career, or *scenes a faire* common to all boxing stories." The problem is, they presented no evidence to substantiate that argument,

and there was evidence to the contrary [ER 1956, 1083-84; 1974 – 77]. By making this argument Appellees are really saying the Film, too, is nothing but historical, unprotectable facts and *scenes a faire*. If, tomorrow, Petrella decided to produce her own Film based on the Screenplay, this court can be assured Appellees would be singing a different tune.

In the end, the district court found there was a triable issue of fact on what was, or was not, an actual historical fact and what was fiction. Further, the district court noted, "The question of when and how the use of biographical details or historical facts in an artistic work can give rise to copyrightable expression is rather more complicated than Defendants would allow. The court will deny their summary judgment on this point." [ER-09.]

Orders denying a motion for summary judgment, except in very limited circumstances not present here, are not reviewable on appeal. *Banuelos v. Construction Laborers' Trust Funds for Southern California.,* 382 F.3d 897, 902 (9th Cir. 2004). If the district court erroneously concludes there is a disputed issue of fact precluding summary judgment, when there is none, the moving party's remedy is to go to trial and prevail either by a Rule 50 motion or by a jury verdict. *General Signal Corp. v. MCI Telecom Corp.,* 66 F.3d 1500, 1506-07 (9th Cir. 1995). Had the district court properly concluded laches was not a bar to the action the motion would have been denied on all grounds and it would not have been an

appealable order. Appellees should not be permitted to circumvent the usual rule because the district court erroneously ruled that laches was a bar.

Finally, none of the cases cited by Appellees stand for the proposition that on remand from the Supreme Court after a reversal this court may consider anew whether there might be other grounds on which to affirm the summary judgment, including grounds the lower court considered and rejected. Nor has Appellant found any such authority. No matter what, this court is not obligated to rule on Appellees' alternative grounds for affirmance of the summary judgment motion. *McCoy v. San Francisco City and County,* 14 F.3d 28, 30 (9th Cir. 1994) ("Accordingly, we must reverse the district court's dismissal based on the statute of limitations. . . . We decline to affirm on any of the alternate grounds submitted to the district court in defendant's motion to dismiss."); *Portman v. County of Santa Clara,* 995 F.3d 898, 910 (9th Cir. 1993) (appellate court is not obligated to affirm on alternate grounds).

### 3. NO FURTHER BRIEFING OR ORAL ARGUMENT SHOULD BE PERMITTED.

Appellees had a full and fair opportunity to brief their position on the the Copyright Arguments in the district court and in the Ninth Circuit. They took advantage of that opportunity. Presumably they could have raised the alternate grounds in their Supreme Court brief as well. As explained above, a substantial

portion of their briefs in the district and appellate courts were devoted to the Copyright Arguments. There is no reason to allow Appellees an opportunity to file yet another brief on this same subject. There is nothing more to be said, and certainly nothing more to be said that could not have been presented previously.

Likewise, there were no limitations on what the parties were permitted to present in oral argument. Ordering a second oral argument will simply result in greater expense and further delay.

## 4. **CONCLUSION.**

There is no reason to give Appellees a second bite of the apple. They have cited no authority which grants them that right, and the clear suggestion in the Supreme Court's opinion is that the case was being remanded for trial. Neither side has found a case in which summary judgment was affirmed on grounds expressly considered and rejected by the trial court, especially where the judge found there were disputed issues of fact. This is especially true after a remand from the Supreme Court which reversed the decision of the district court and the Ninth Circuit. To the extent the court feels it has discretion it should decline to exercise the discretion. Appellees' rights are fully protected. They might prevail

/ / /

 / / /

at trial, and if they lose, they have a right to appeal on any relevant grounds including the Copyright Arguments.

Dated: July 10, 2014 KULIK GOTTESMAN & SIEGEL LLP

By: /s/ *Glen L. Kulik*
    Glen L. Kulik, Esq.
    Attorneys for Plaintiff/Appellant